## No. 15,127.

### DOLFIN *v.* BRUESSELBACH, TRUSTEE.
(143 P. [2d] 1014)

Decided December 6, 1943.

Mr. MERLE M. MARSHALL, Mr. ALVIN DAVID LICHTEN-STEIN, for plaintiff in error.

Messrs. SCHAETZEL & KNIGHT, for defendant in error.

526

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

This is an action to recover $1011.82 and interest, the same being the alleged balance due on a contract for the sale of sheep which one Kinderman, plaintiff below, by his agent Rodriquez, sold to Dolfin, plaintiff in error here, defendant below, through his, Dolfin's, alleged agents Martinez and Sanborn. Pending the litigation, Kinderman died, and Bruesselbach, as testamentary trustee of his estate, was substituted as plaintiff. After trial to the court, judgment was rendered in favor of plaintiff for $1,125.07 and costs. Dolfin seeks reversal.

The record discloses that in October, 1939, Kinderman, a resident of Denver, owned a large number of sheep which were in charge of Rodriquez, who had acted as his foreman and agent for many years. Dolfin and one Sanborn, allegedly were partners in the sheep business and lived in Alamosa, Colorado, and Martinez lived in Chama, New Mexico. October 6, Martinez approached Rodriquez and offered to purchase 2,250 head of the sheep for Dolfin. After some preliminary discussion they agreed on a price of eight cents a pound and a contract of sale and purchase at the agreed price was signed: "William Kinderman by J. S. Rodriquez," "Ed Dolfin by A. S. Martinez." The contract also recited certain conditions as to weight and freedom from disease. Martinez gave Rodriquez a draft for $2,250 drawn by himself on Dolfin payable at the Alamosa National Bank. On that evening Martinez notified Dolfin of the purchase and Kinderman was likewise advised by Rodriquez who immediately mailed the draft to him. Payment of the draft was refused upon its presentation at the bank in Alamosa, whereupon Kinderman advised Dolfin that he expected to hold him to the contract and that if he continued to dishonor the draft, the sheep would be sold elsewhere and that he would look to Dolfin for any

loss he might sustain. Dolfin refused to comply with the terms of the contract. Kinderman sold about 1,800 of the sheep on October 23, and the remainder November 20.

The complaint is grounded on the contract and Martinez's and Sanborn's agency for Dolfin. Dolfin answered, denying the alleged agency, and asserted that the true relationship between himself and Sanborn was that of partners and that by virtue of Martinez's lack of authority neither the contract nor draft was binding upon him.

The five specifications of points may be summarized as follows: 1. Insufficiency of proof to establish the agency of Martinez. 2. The trial court erred in admitting certain testimony and exhibits. 3. Error of the trial court in fixing the measure of damages used in awarding judgment.

1. As to proof of the fact of Sanborn's agency, we find in the record evidence of Dolfin's admission that over a period of years, "if he [Sanborn] saw something that was good and I [Dolfin] thought it was alright to draw a draft, if everything was alright I o.k.'d the draft." The role of Martinez in these transactions is indicated by the following testimony of Dolfin:

"Q. Now, isn't it true that Mr. A. S. Martinez bought sheep for you this way too? A. No, sir. "Q. He never bought any sheep for you? A. No, sir. "Q. Either before or after this Kinderman deal? A. Last fall he bought one little bunch; that was in the fall of 1940. "Q. He didn't buy any in 1939? A. No. "Q. He never drew any drafts on you which you paid? A. He drew drafts on me, but he was not buying for me, he was buying when Sanborn told him to buy them. "Q. He was buying for Sanborn and drawing drafts on you? A. Yes. "Q. And you were paying the drafts? A. I was paying the bill. "Q. He did that though? A. Yes. "Q. In fact he had numerous transactions of that sort didn't he? A. Yes. "Q. Over quite a period of time?

A. He bought several little bunches of lambs over there. "Q. In 1938 and 1939? A. I don't know whether he bought any in 1938, I don't think he did. "Q. But he bought some in 1939? A. Yes. "Q. And he drew drafts on you? A. Yes. "Q. And he made sheep contracts too, didn't he? A. Yes."

The witness was then referred to several specific contracts by name and interrogated further:

"Q. He made these contracts in your name? A. Yes. "Q. And you paid the draft? A. Yes. "Q. But he wasn't buying for you? A. No, he wasn't buying them for me direct. "Q. He was buying them for who? A. Sanborn. "Q. And they never became your sheep. A. Yes, they were my sheep. "Q. The sheep ultimately belonged to you then? A. Yes, that is right. "Q. In other words, he was buying them on Sanborn's directions? A. For him. "Q. For you? A. Yes. "Q. That is what was happening? A. Yes. "Q. And Mr. Sanborn gave Mr. Martinez his directions, is that true? A. Yes. "Q. And you gave your instructions to Sanborn? A. Yes."

■■ We think this evidence, coming from Dolfin's own lips, shows an express agency as between him, Sanborn and Martinez and is illustrative of the fundamental maxim of agency, "Qui facit per alium facit per se." 2 C.J.S. 1023. It was not a case of Sanborn appointing Martinez as his agent, but rather one in which Dolfin adopted Martinez as his own. Dolfin was asked the question, "Had you and Mr. Sanborn had any conversation or any negotiations whatsoever regarding the purchase of the Kinderman sheep?" and replied, "We talked about it and said if we could buy them right why we might buy them." At the time, as will later appear, Martinez had written instructions to buy any good sheep at eight cents a pound, and, as already noted, he bought the Kinderman sheep at that price. If the principal adopts the use of a substitute agent he is liable. *Blackfeet Livestock Co. v. Northwestern National Bank,* 138

Ore. 530, 5 P. (2d) 702, citing 1 Parson on Contracts, sections 83-85; Tiffany on Agency, sections 27-28 and 1 Mechem on Agency, sections 305 and 306.

■ In seeking reversal, counsel for Dolfin rely almost entirely upon the case of *Sigel-Campion Co. v. Ardohain,* 71 Colo. 410, 207 Pac. 82. What we have already said shows important distinctions between that case and the one at bar, but counsel says that according to the undisputed testimony of Sanborn that, "Mr. Martinez called me on the phone and told me he could buy the Kinderman lambs for eight and a half cents and I told him we didn't want any lambs * * * at that price and he said maybe I can get them for eight and I told him to see what he could do and let me know." However, on September 29th, Sanborn had written Martinez, inter alia, "Buy the lambs and ewes as cheap as you can." "Raise the price * * * pay * * * 8 cents if you have to for the very best ones" and " * * * Try to get the Garcia family lambs and any other good ones." He complied with the telephonic order in advising Sanborn, when he sent the contract to Sanborn who accepted the contract subject to certain conditions which proved to be immaterial. In the Sigel-Campion Company case, supra, the agent's lack of authority to purchase without express acceptance as to price by the company was positively shown, while here Sanborn's and Martinez's agency is shown even as to the price. The agency being shown, the evidence of Martinez's other transactions for Dolfin was admissible to show the scope of his authority. *Burnell v. Morrison,* 46 Colo. 533, 105 Pac. 876; *Zeller v. Morey Mercantile Co.,* 95 Colo. 507, 37 P. (2d) 392.

2. No error was committed by the court in the admission of the challenged evidence. (a) The testimony of Rodriquez as to prior dealings was admissible as showing the course of conduct of Dolfin. As to that testimony, the objection was withdrawn. Rodriquez's testimony to the effect that Martinez said he was Dolfin's

agent was stricken, and his testimony as to the identity of the draft and contract was rejected; but that the draft was drawn is admitted by the pleadings and the execution of the contract is shown by Sanborn's letters. (b) Plaintiff's exhibit 7 was properly admitted. It consisted of nine receipts signed "Ed Dolfin by A. S. Martinez" and shows purchases of sheep from as many individuals in the same community, eight of them in the first week of October, 1939, and the other on October 2, 1938, all within the time Dolfin admitted that Martinez was doing business for him, and the drafts for such purposes were honored in due course. That this evidence was proper we have already indicated. (c) The rest of the exhibits to which objection is made are the papers from the commission house in Denver, which when properly identified—and these were by defendant in error—are simply proof of the sale of the sheep subsequent to Dolfin's refusal to carry out the contract. These were admissible on the issue of damages to show that due diligence was used to minimize the loss to Dolfin.

3. As to the measure of damages employed by the trial court, Dolfin is in no position to complain. His contention is that the measure of damages was the difference between the contract price and the market value at the time and place of delivery of the property described in the contract; but this rule is not controlling where, as here, "the vendor has satisfactorily · proven that he exercised the right [to resell] in good faith and at such time and in such manner and by such methods, and under such circumstances, as were best calculated to protect the rights of the defaulting vendee, and secure the present market price for the property." *Magnus v. Sioux City Nursery & Seed Co.*, 14 Colo. App. 219, 59 Pac. 879. That the sale made by defendant in error in this case resulted in minimizing the loss to Dolfin is amply supported by the record. Another complaint is that the sheep were not up to the weight the contract

called for and that certain unmerchantable sheep were to be excluded. As to these conditions the trial court found specifically that "there is no claim or any figure or any evidence that these elements said to have been left out of the contract have resulted in the sheep bringing less than they otherwise would have brought; that it cut any figure in the disposition of them itself." The record supports this conclusion, and that the sheep were "good ones" is indicated by the fact that they brought top prices when sold. There was no error on the part of the trial court in adopting the measure of damages applied.

The principal question in this case was one of agency. There was very little conflict in the evidence, but different inferences could be drawn therefrom. We are satisfied that those drawn by the trial court were justified and that a contract binding on Dolfin was made, and as to that issue the trial court adjudicated properly.

Judgment affirmed.

MR. JUSTICE GOUDY not participating.